UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANTHONY BROOKS,<br><br>Plaintiff,<br><br>v.<br><br>C.M.C. et al,<br><br>Defendants. | Case No. 2:20-cv-10374-DSF (MAA)<br><br>**MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

**I.     INTRODUCTION**

On November 10, 2020, Plaintiff DeAnthony Books ("Plaintiff"), a California inmate proceeding *pro se*, filed a Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Compl., ECF No. 1.) On December 8, 2020, Plaintiff filed a Request to Proceed Without Prepayment of Filing Fees (ECF No. 5), which the Court granted on December 10, 2020 (ECF No. 6).

The Court has screened the Complaint as prescribed by 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B). For the reasons stated below, the Complaint is **DISMISSED WITH LEAVE TO AMEND**. Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a First Amended Complaint

...
...

("FAC"), or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a FAC.

## II.    PLAINTIFF'S ALLEGATIONS AND CLAIMS[1]

The Complaint is filed against the following Defendants:  (1) C.M.C.[2]; (2) Dr. Tyler Campbell, primary care physician, in his individual capacity; (3) Silveira, registered nurse, in his or her individual capacity; (4) Dr. Aaron Collins, primary care physician, in his individual capacity; (5) Mike Dawson, head supervisor of CMC plant operations maintenance department, in his individual capacity; (6) Matt Doolin, supervisor of CMC plant operations maintenance department, in his individual capacity; (7) Alger, correctional officer, in his or her individual capacity; and (8) T. Whitson, registered nurse, in his or her individual capacity (each, a "Defendant," and collectively, "Defendants").  (Compl. 1, 3–5.)[3]

Plaintiff asserts claims for violations of the Eighth Amendment for "deliberate indifference to medical care" and "premise liability" based on the following allegations.  (*Id*. at 6.)

On May 29, 2020, at approximately 9:15–9:30 a.m., Plaintiff was at work at the C.M.C. plant operations maintenance fabrication shop.  (*Id*.)  Plaintiff and his co-worker, inmate Marquette Shelton, were instructed to carry some fence poles—which were fifteen/sixteen feet in length with "substantial weight"—down some

---

[1] The Court summarizes Plaintiff's allegations and claims in the Complaint, without opining on their veracity or merit.

[2] The caption of the Complaint names as a Defendant C.M.C., which the Court presumes stands for California Men's Colony.  (*See* Compl. 1.)  C.M.C. is not listed in the body of the Complaint as a Defendant.  (*See id*. at 3–5.)  For purposes of this order only, the Court presumes that Plaintiff intended to include C.M.C. as a Defendant.  In any amended complaint, Plaintiff must specifically name each Defendant in the body of the complaint, not just in the caption.

[3] Citations to pages in docketed documents reference those generated by CM/ECF.

2

stairs. (*Id.*) The stairs were damaged with a "metal clipping" that "grabs your shoe from the bottom" that "should have been fixed after supervisors were notified of it, making Doolin and Dawson aware of its potential to harm someone." (*Id.*) The "chipped out concrete" of the stair plate had been there since inmate Shelton "was first hired." (Compl., Ex. B.: Shelton Decl. 15.) Plaintiff was carrying the back end of the poles down the stairs, while inmate Shelton was carrying the front end of the poles. (Compl. 6.) As Plaintiff took a step down, his right foot was "grabbed and caught" and he fell down about four steps. (*Id.*; Shelton Decl. 15.) Plaintiff landed in an awkward position and the fence poles fell "all over him," hitting his neck and shoulders and knocking his shoulder out of place. (Compl. 6.) Plaintiff "immediately popped [his] shoulder back in place due to the pain he was feeling and history of it from a football injury . . . ." (*Id.* at 7.) Plaintiff also felt "excruciating," "sharp" pain in his right leg around the ankle, causing him to scream and say "man down." (*Id.*)

Plaintiff's co-workers, including inmate Shelton, yelled to get Plaintiff assistance. (*Id.*) Plaintiff and inmate Shelton told Defendant Dawson that they thought Plaintiff "broke something, referring to his leg and shoulder"; that Plaintiff had "popped" his shoulder back in place; and that he needed "to go to medical for [an] x-ray or something." (*Id.*) Defendant Dawson told Plaintiff to take the day off to rest. (*Id.*)

Plaintiff attempted to go back to his housing unit that was at least one mile away. (*Id.*) As Defendant Dawson did not offer Plaintiff "any type of ambulatory with his injury," inmate Shelton attempted to assist Plaintiff. (*Id.*) Plaintiff was in such excruciating pain that inmate Shelton decided to take Plaintiff to what is known as the old hospital. (*Id.*) When they arrived, inmate Shelton requested help for Plaintiff and explained that Plaintiff was severely injured at work and needed medical attention because his shoulder was maybe out of place and his leg may be broken. (*Id.*) Defendants Campbell and Silveira looked at Plaintiff's leg and agreed

3

that it might be broken and instructed Plaintiff to to go the new clinic. (*Id*. at 8.) Defendants Campbell and Silveira did not provide any "ambulatory service" or care for Plaintiff. (*Id*.)

Plaintiff walked one to two miles to the new clinic with inmate Shelton. (*Id*.) When they arrived, Plaintiff told Defendant Alger about his fall and injury, and that Plaintiff first went to the old clinic and was sent to the new clinic. (*Id*.) Defendant Alger ignored Plaintiff's request for emergency treatment and told Plaintiff that he needed to be accompanied by one of his supervisors at the clinic. (*Id*.) Plaintiff said that all his supervisors had left the facility, and that his supervisors were irrelevant at that point because he was no longer at the job site. (*Id*. at 9.) Defendant Alger called to find Plaintiff's supervisor but "no one showed up for hours." (*Id*.) As Plaintiff was in severe pain, he decided to leave to go back to his housing unit as he was not receiving any care and the injury was swelling and the pain was getting worse. (*Id*.)

As inmate Shelton was helping Plaintiff back to his housing unit, they saw Defendant Doolin, one of Plaintiff's supervisors. (*Id*.) Defendant Doolin said he had been called to accompany Plaintiff at the clinic, apologized for not arriving sooner, and said he was "tied up [and] did his best to get there and he knew Plaintiff was in serious pain but he made it eventually." (*Id*.) Inmate Shelton left and Defendant Doolin took Plaintiff back to the old clinic, where Plaintiff was given a cane. (*Id*.)

The treatment Plaintiff finally received at the new clinic was below minimal standards. (*Id*.) Defendants doctor and nurse looked at Plaintiff's injuries, saw his bone pressing against his skin, and determined it was probably a bad ankle sprain. (*Id*.) They told Plaintiff that he is a "big guy" and that basketball and football players had this injury all the time and could play the following week, which Plaintiff characterized as an unwarranted "racial comment." (*Id*. at 10.) They did

///

4

nothing to treat Plaintiff except give him ibuprofen, and say that they would see him again in five days. (*Id*.)

However, Plaintiff did not see a doctor again for approximately twelve to fourteen days. (*Id*.) During this time, Plaintiff submitted almost ten requests for medical care but did not receive any responses, had swelling in his leg and ankle, had night sweats, could not sleep due to the pain, could not walk to eat meals and lost weight as a result, could not use the bathroom to take a bowel movement properly, could not shower, and suffered mental anguish and pain. (*Id*.)

Plaintiff did not receive medical treatment again until June 11 or 12, 2020. (*Id*. at 10–11.) An x-ray was taken of Plaintiff's leg, which revealed a fracture in Plaintiff's right fibula around the ankle area. (*Id*. at 10.) Plaintiff was given a cane, walking boot, and calcium and vitamin D pills. (*Id*.) Defendants Collins and Whitson provided inadequate medical care because they did not give Plaintiff any physical therapy or surgery. (*Id*. at 11.)

Plaintiff seeks compensatory damages of "$50,000 plus"; nominal damages of "$50,000 plus"; punitive damages of $50,000 per Defendant; and attorney and legal assistant fees. (*Id*. at 17.)

### III.   LEGAL STANDARD

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma pauperis* (28 U.S.C. § Section 1915(e)(2)(B)).  The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is:  (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

///

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)). To survive a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although "detailed factual allegations" are not required, "an unadorned, the-defendant-unlawfully-harmed-me accusation"; "labels and conclusions"; "naked assertion[s] devoid of further factual enhancement"; and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to defeat a motion to dismiss. *Id.* (quotations omitted). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

In reviewing a Rule 12(b)(6) motion to dismiss, courts will accept factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Moreover, where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt. *Wilhelm*, 680 F.3d at 1121. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th

Cir. 2011). However, the liberal pleading standard "applies only to a plaintiff's factual allegations." *Neitzke v. Williams,* 490 U.S. 319, 330 n.9 (1989), *superseded by statute on other grounds*, 28 U.S.C. § 1915. Courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003). In giving liberal interpretations to complaints, courts "may not supply essential elements of the claim that were not initially pled." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

## IV. DISCUSSION

### A. C.M.C. Is Not a Proper Defendant.

The Complaint includes as a Defendant C.M.C., a prison which is part of the California Department of Corrections and Rehabilitation. (*See* Compl. 1.) However, "[i]n the absence of a waiver by the state or a valid congressional override, 'under the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court.'" *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) (quoting *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1989)). The Eleventh Amendment bar "applies whether the relief sought is legal or equitable in nature." *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991). The *Ex Parte Young* doctrine, which "provid[es] an exception to Eleventh Amendment immunity for suits against state officials seeking prospective equitable relief, is limited to claims against individual state officials and does not extend to agencies." *Shallowhorn v. Molina*, 572 Fed. Appx. 545, 547 (9th Cir. 2014).

For these reasons, Plaintiff's claims against Defendant C.M.C. are not cognizable. If Plaintiff includes claims against Defendant C.M.C. in any amended complaint, they will be subject to dismissal.

### B. The Complaint Does Not State Any Section 1983 Claims.

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in original) (quoting 42 U.S.C. § 1983). "The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id*. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Complaint asserts claims pursuant to the Eighth Amendment for "deliberate indifference to medical care" and "premise liability." (Compl. 6.) For the reasons below, the Complaint fails to state any Section 1983 claims.

#### 1. Eighth Amendment Deliberate Indifference to Serious Medical Needs

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976)). "To maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104). A plaintiff must allege sufficient facts to satisfy a two-prong test: (1) an objective standard—the existence of a serious medical need; and (2) a subjective standard—deliberate indifference. *See id*.

a. *Objective Prong*

A "serious medical need" exists if "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). Neither result is the type of "routine discomfort [that] is 'part of the penalty that criminal offenders pay for their offenses against society.'" *McGuckin*, 974 F.2d at 1059 (alteration in original) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059–60.

Plaintiff alleges that he fell down about four steps while carrying fifteen/sixteen foot-long fence poles of "substantial weight," that the poles fell "all over him" and hit his neck and shoulders, that his shoulder became dislocated, that he felt "excruciating," "sharp" pain, and that an x-ray revealed a fracture in his right fibula around the ankle area. (Compl. 6–7, 10.) These allegations potentially plead injuries that a reasonable doctor likely would think are worthy of treatment, and are sufficient to state a serious medical need. *See, e.g., Lambert v. Soto*, No. 10cv1976-AJB (BLM), 2012 U.S. Dist. LEXIS 166624, at *15–17 (S.D. Cal. Sept. 12, 2012) (concluding that allegations of difficulty breathing, inability to bear weight on a knee, and dislocated shoulder plausibly alleged a serious injury or illness); *Woodward v. Wang*, No. 1:16-cv-01089-SAB (PC), 2019 U.S. Dist. LEXIS 11693, at *18 (E.D. Cal. Jan. 23, 2019) (concluding that a fractured ankle is a serious medical need).

///

       b.  *Subjective Prong*

The subjective "deliberate indifference" prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." *McGuckin*, 974 F.2d at 1059. Negligence is insufficient to support an Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Rather, deliberate indifference is met only if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 834. "A defendant must purposefully ignore or fail to respond to the plaintiff's pain or possible medical need for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060.

       i.  Inadequate Medical Treatment

The Complaint asserts an Eighth Amendment claim for alleged deficiencies in medical care provided to Plaintiff. With respect to the treatment Plaintiff received on May 29, 2020, the Complaint alleges that such treatment was below minimal standards; that Defendants doctor and nurse looked at Plaintiff's injuries, saw his bone pressing against his skin, and determined it was probably a bad ankle sprain; and that Defendants doctor and nurse did nothing to treat Plaintiff except give him ibuprofen. (Compl. 9–10.) With respect to the treatment Plaintiff received on June 11 or 12, 2020, the Complaint alleges that an x-ray was taken of Plaintiff's leg, which revealed a fracture in Plaintiff's right fibula around the ankle area; that Plaintiff was given a cane, walking boot, and calcium and vitamin D pills; and that Defendants Collins and Whitson provided inadequate medical care because they did not give Plaintiff any physical therapy or surgery. (*Id*. at 10–11.)

To begin with, it is unclear which Defendants provided Plaintiff medical treatment on May 29, 2020 and June 11 or 12, 2020. (*See* Compl. 9–11.) With respect to May 29, 2020, the Complaint alleges that Plaintiff received medical treatment from "Defendant doctor and nurse," without providing any specific names. (*See id.* at 9–10.) With respect to June 11 or 12, 2020, the Complaint again does not specify who provided Plaintiff medical care, but does state that Defendants Collins and Whitson should have provided Plaintiff physical therapy or surgery. (*See id.* at 10–11.) However, to state an individual capacity claim under Section 1983, Plaintiff must specifically identify the Defendants who caused the purported deprivation of his constitutional rights. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) ("A person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." (quotations and citations omitted)).

Even if Plaintiff had specifically named the Defendants who provided Plaintiff medical treatment, the Complaint does not contain sufficient allegations to satisfy the subjective prong of "deliberate indifference." Plaintiff's dissatisfaction with his medical treatment is insufficient to state an Eighth Amendment claim. "[A]n inadvertent failure to provide adequate medical care," "negligence in diagnosing or treating a medical condition," medical malpractice, or a decision not order a particular form of treatment do not violate the Eighth Amendment. *Estelle*, 429 U.S. at 105–08. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

To the extent that Plaintiff's Eighth Amendment claim is based on his disagreement with the care he received, such claim fails. "A difference of opinion between a prisoner-patient and prison medical authorities" does not rise to the level

11

of a constitutional violation. *Franklin v. State of Oregon*, *State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). Indeed, "'a difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (quoting *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). Rather, "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi v. Chung*, 391F.3d 1051, 1058 (9th Cir. 2004) (alteration in original) (quoting *Jackson*, 90 F.3d at 332). The Complaint contains no allegations to reasonably lead to either conclusion.

For these reasons, Plaintiff's Eighth Amendment deliberate indifference claims regarding the quality of his medical treatment fail. If Plaintiff files an amended complaint with such a claim, he must correct these deficiencies or risk its dismissal.

                              ii.     Delay of Medical Treatment

The Complaint also asserts Eighth Amendment deliberate indifference claims for the alleged delays in Plaintiff's receipt of medical treatment, both initially on May 29, 2020 and as to his receipt of follow-up treatment on June 11 or 12, 2020. Specifically with respect to Defendant Dawson, the Complaint alleges that Defendant Dawson was advised of Plaintiff's injuries shortly after the accident on May 29, 2020, and that Defendant Dawson gave Plaintiff the day off. (Compl. 7.) As to Defendants Campbell and Silveira, the Complaint alleges that inmate Shelton took Plaintiff to the old hospital, where Defendants Campbell and Silveira were advised of Plaintiff's injuries, examined Plaintiff's leg, agreed that it might be broken, and instructed him to go to the new clinic without providing any ambulatory assistance. (*Id.* at 7–8.) With respect to Defendant Alger, the Complaint alleges that

when Plaintiff and inmate Shelton arrived at the new clinic, Defendant Alger was advised of Plaintiff's accident and injuries, ignored Plaintiff's request for emergency treatment, told Plaintiff that he needed to be accompanied by one of his supervisors at the clinic, and attempted to call Plaintiff's supervisor but "no one showed up for hours." (*Id*. at 8–9.) As to Defendant Doolin, the Complaint alleges that Defendant Doolin was called to accompany Plaintiff at the clinic, was "tied up," but eventually arrived and took Plaintiff to get medical treatment. (*Id*. at 9.) Lastly, the Complaint alleges that although Defendant doctor and nurse told Plaintiff on May 29, 2020 that they would see him again in five days, Plaintiff did not see a doctor again for approximately twelve to fourteen days, despite submitting approximately ten requests for medical treatment. (*Id*. at 10.)

      These allegations fail to state an Eighth Amendment claim for several reasons. <u>First</u>, the allegations of the Complaint do not state sufficient facts from which it reasonably could be inferred that Defendants Dawson, Campbell, Silveira, Alger, or Doolin acted with deliberate indifference. *See Farmer*, 511 U.S. at 835 ("Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986))).

      <u>Second</u>, a delay in providing medical treatment, standing alone, does not constitute an Eighth Amendment violation. *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002). Where a plaintiff alleges that delay of medical treatment evinces deliberate indifference, he or she must show that the delay led to further injury. *See McGuckin*, 974 F.2d at 1060; *Hallett*, 296 F.3d at 746 ("Plaintiffs could not prove an Eighth Amendment violation because they have not demonstrated that delays occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known this to be the case."). Here, the delays of unspecified time in Plaintiff's receipt of medical treatment on May 29, 2020 are insufficient to state an Eighth Amendment claim because Plaintiff was treated on May 29, 2020 and the Complaint does not allege harms resulting from the delays.

13

*See Berry v. Bunhill*, 39 F.3d 1056 (9th Cir. 1994) (per curiam) (affirming directed verdict declining to find deliberate indifference for "minor delays"—being seen by a doctor within two hours and provision of antibiotics the next day—where there was no evidence that such delays caused any harm); *Wood*, 900 F.2d at 1335 ("Nor does the delay in treatment that [plaintiff] suffered constitute an eighth amendment violation; the delay must have caused substantial harm.").

Third, with respect to the alleged delay between Plaintiff's initial May 29, 2020 treatment and his follow-up treatment on June 11 or 12, 2020, the Complaint does not specify which Defendants allegedly were responsible for the delay in Plaintiff's second treatment. There can be no liability under Section 1983 unless there is an affirmative link or connection between a defendant's actions and the claimed deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).

For these reasons, Plaintiff's Eighth Amendment deliberate indifference claims for delays in receiving medical treatment fail. If Plaintiff files an amended complaint with such a claim, he must correct these deficiencies or risk its dismissal.

### 2. Eighth Amendment Conditions of Confinement

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits cruel and unusual punishments. *Farmer*, 511 U.S. at 832 (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "In other words, they must not be devoid of legitimate penological purpose, or contrary to evolving standards of decency that mark the progress of a maturing society." *Id.* (citations and quotations omitted). "An Eighth Amendment claim that a prison official has deprived inmates of humane conditions must meet two requirements, one

objective and one subjective." *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (quoting *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1995)).

          a.    *Objective Prong*

To satisfy the objective prong of the Eighth Amendment, "the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations and citations omitted). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. 'The more basic the need, the shorter the time it can be withheld.'" *Id.* (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)).

Here, the Complaint asserts that Plaintiff tripped on a "metal clipping" on a step, which "grabs your shoe from the bottom" and that "should have been fixed after supervisors were notified of it, making Doolin and Dawson aware of its potential to harm someone." (Compl. 6.) As Plaintiff was descending the stairs, his right foot was "grabbed and caught" and he fell down four steps. (*Id.*)

"Federal courts have repeatedly rejected Eighth Amendment claims based on slip and falls." *Oubichon v. Carey*, No. 2:06-cv-2749-JAM-EFB P, 2017 U.S. Dist. LEXIS 75378, at *22–*23 (E.D. Cal. May 16, 2017) (collecting cases); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("[E]ven if the floors . . . are slippery and [inmates] might fall . . ., 'slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment.'") (quoting *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989))). "Many courts have concluded that poorly maintained surfaces . . . do not generally pose a substantial risk of serious harm, and are instead claims fundamentally sounding in negligence—which is insufficient to violate the

Eighth Amendment as a matter of law." *Miranda v. Madden*, No.: 3:19-cv-01605-LAB-RBM, 2019 U.S. Dist. LEXIS 192188, at *11 (S.D. Cal. Nov. 4, 2019) (quotations omitted). "Courts have reached this conclusion, even where the hazard has existed, and been known to prison officials, for years and where the prisoner was required to use the dangerous location . . . ." *Pauley v. California*, No. 2:18-cv-2595 KJN P, 2018 U.S. Dist. LEXIS 193388, at *11 (E.D. Cal. Nov. 13, 2018) (collecting cases).

However, poorly-maintained surfaces and floors "could create a sufficient danger to warrant relief" where the plaintiff has a known exacerbating condition. *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (reversing grant of summary judgment on an Eighth Amendment claim for prison officials' failure to provide an accessible shower to inmate who used crutches when they knew the inmate had fallen and injured himself several times); *Sharrott v. Halawa Prison ADA Compl. Team*, No. 18-00486 JMS-RT, 2019 U.S. Dist. LEXIS 6624, at *9 (D. Haw. Jan. 14, 2019) ("To state a colorable constitutional violation, slippery floors normally must be alleged in conjunction with some other exacerbating condition."); *Brown v. Flores*, No. 18-CV-01578 LHK (PR), 2018 U.S. Dist. LEXIS 229920, at *7 (N.D. Cal. Oct. 3, 2018) ("In order to state a cognizable claim for relief, there must be a confluence of exacerbating conditions such that the flooded cell posed a serious, unavoidable threat to plaintiff's safety and defendants knew of this substantial risk."). Thus, "awareness of a prisoner's disability or proclivity toward falling may turn a slippery prison floor into a potential constitutional claim, depending on the level of danger and awareness." *Jones v. Meddly*, No. 1:17-cv-00109-SAB (PC), 2019 U.S. Dist. LEXIS 122784, at *19 (E.D. Cal. July 23, 2019).

Here, the Complaint does not allege that Plaintiff had a known exacerbating condition that would make him susceptible to tripping on the steps. *See Slocum v. Fowler*, No. 2:16-cv-02169-JAD-CWH, 2018 U.S. Dist. LEXIS 159298, at *7 (D. Nev. Sept. 18, 2018) (holding that plaintiff did not allege an Eighth Amendment

violation for a slippery floor where there were no allegations that defendants had prior knowledge of a physical limitation of plaintiff). In the absence of a known, exacerbating condition, the Complaint does not state a claim for cruel and unusual punishment for the defective step. *See LeMaire*, 12 F.3d at 1457.

### b. *Subjective Prong*

To satisfy the Eighth Amendment's subjective prong, there must be allegations that a prison official acted with "deliberate indifference" to an inmate's health or safety—that is, "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Negligence is insufficient to support an Eighth Amendment claim. *See id.* at 835.

Here, the Complaint alleges that Plaintiff's shoe got caught on a metal clipping on a stair that "should have been fixed after supervisors were notified of it making Doolin and Dawson aware of its potential to harm someone." (Compl. 6.) However, there are no allegations in the Complaint from which it reasonably could be inferred that any Defendant acted with deliberate indifference. Indeed, there are only conclusory, speculative allegations that Defendants Doolin and Dawson were aware of the purported risks, which are insufficient to state a claim for deliberate indifference. *See, e.g., Graves v. Cal. Dep't of Corr. & Rehab.*, No. EDCV 17-1086 JGB (SPx), 2019 U.S. Dist. LEXIS 229086, at *19 (C.D. Cal. Nov. 14, 2019) (holding that conclusory assertions unsupported by further factual allegations are not sufficient to infer actual knowledge and indifference); *Marks v. Doe*, No. C09-5489 RJB/KLS, 2010 U.S. Dist. LEXIS 24209, at *13 (W.D. Wash. Feb. 23, 2010) (holding that conclusory allegations without specific facts regarding defendants' knowledge was insufficient to plead deliberate indifference). The allegations in the Complaint that Plaintiff tripped and fell over a faulty step amounts to no more than

negligence, which is not actionable under Section 1983. *See Johnson v. Hernandez*, No. 19-cv-03936-YGR (PR), 2020 U.S. Dist. LEXIS 69123, at *5 (N.D. Cal. Apr. 20, 2020) ("Although regrettable, Plaintiff's allegations that he tripped over a raised metal door sill . . . must be dismissed because it amounts to no more than a claim for negligence, which is not actionable under section 1983.").

For these reasons, Plaintiff's Eighth Amendment cruel and unusual punishments claim fails. If Plaintiff files an amended complaint with an Eighth Amendment claim for cruel and unusual punishments, he must correct these deficiencies or risk dismissal of such claim.

## V. CONCLUSION

For the reasons stated above, the Court **DISMISSES** the Complaint **WITH LEAVE TO AMEND**. Plaintiff may have an opportunity to amend and cure the deficiencies given his *pro se* prisoner status. Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a FAC, or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a FAC.

The FAC must cure the pleading defects discussed above and shall be complete in itself without reference to the Complaint. *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseding pleading."). This means that Plaintiff must allege and plead any viable claims in the FAC again. Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the Complaint.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a**

**copy of which is attached.** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a FAC, or timely advise the Court that Plaintiff does not intend to file a FAC, will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Plaintiff is not required to file an amended complaint, especially since a complaint dismissed for failure to state a claim without leave to amend may count as a strike under 28 U.S.C. § 1915(g). Instead, Plaintiff may request voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a) using the attached Notice of Voluntary Dismissal form.

Plaintiff is advised that the undersigned Magistrate Judge's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of the claim. Accordingly, although the undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action. However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned Magistrate Judge previously found to be insufficient, then, pursuant to 28 U.S.C. § 636, the undersigned Magistrate Judge ultimately may submit to the assigned District Judge a recommendation that such claim may be

///

dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections. *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

IT IS SO ORDERED.

DATED: January 8, 2021

MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

Attachments

Form Civil Rights Complaint (CV-66)

Form Notice of Dismissal